1          IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
2        BEFORE THE HONORABLE SHEILA K. OBERTO, MAGISTRATE JUDGE

3
     UNITED STATES OF AMERICA,
4
                    Plaintiff,
5    vs.                         Fresno, California
                                 No. 1:20-CR-00219
6    MICHAEL DICKENS,            Friday, December 4, 2020
                                 2:11 p.m.
7                   Defendant.
     _____/
8

9                        --oOo--

10              REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                 RE: DETENTION HEARING

12        (Proceedings held via Zoom video conference.)

13                       --oOo--

14   APPEARANCES:

15   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              LAURA WITHERS
16                            Assistant U.S. Attorney
                              2500 Tulare Street, Suite 4401
17                            Fresno, CA  93721

18   For the Defendant:       NUTTALL & COLEMAN
                              ROGER T. NUTTALL
19                            Attorney at Law
                              2333 Merced Street
20                            Fresno, CA  93721

21   Official Reporter:       KACY PARKER BARAJAS
                              CSR No. 10915, RMR, CRR, CRC
22                            UNITED STATES DISTRICT COURT
                              501 I Street, Suite 4-200
23                            Sacramento, CA  95814
                              kbarajas.csr@gmail.com
24
     *Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.*

1          FRESNO, CALIFORNIA, FRIDAY, DECEMBER 4, 2020, 2:11 PM

2                              --oOo--

3          THE COURT:  Good afternoon, sir.  Are you Mr. Michael

4     Dickens?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Good afternoon to you, sir.

7          If we can call the case of United States versus

8     Michael Dickens, action number 20-CR-219.

9          If we can please have the parties' appearances.

10         MS. WITHERS:  Good afternoon.  Laura Withers

11    representing the United States, and the United States does

12    consent to proceed by Zoom.

13         THE COURT:  Thank you very much, Ms. Withers, and good

14    afternoon.

15         Mr. Nuttall, would you like to make your appearance,

16    and could you please let me know if you consent to appearing

17    via the Zoom application and on your own behalf and on behalf

18    of your client.

19         MR. NUTTALL:  Yes.  Good afternoon, your Honor.

20         Good afternoon, Ms. Withers.

21         Roger Nuttall appearing on behalf of Michael Dickens

22    who is present, and we do consent to the appearance -- Zoom

23    video appearance.

24         THE COURT:  Thank you very much.

25         And good afternoon to you, Officer Gutierrez, and

1    thank you very much for your thorough report.

2         I have reviewed the report, and I'm assuming you agree

3    with the recommendation.  And if so, I would like to hear

4    Ms. Withers' comments regarding the report.

5         MS. WITHERS:  Your Honor, I agree that Ms. Gutierrez's

6    report is well presented.  This is a presumption case, but I do

7    think she's presented a strong list of conditions.

8         I do have a couple of comments.  First of all, with

9    respect to condition number 15, I don't think that Mr. Dickens'

10   daughter should be an exception to this.  She's only two years

11   older to the victim that he thought he was enticing in this

12   case.  The government believes that any contact with the

13   defendant's daughter should be monitored as it would be for any

14   other minor.  I don't think she should be an exception to this.

15   We're concerned about her age in relation to the age of the

16   person that the defendant thought he was enticing.

17        The other --

18        THE COURT:  Ms. Withers, before we move on to that, as

19   I read this condition, it indicates that he shall not have

20   verbal, written, telephonic, or electronic communication with

21   any person under the age of 18 with the exception of his

22   daughter.  So he can have communication -- oh, I see, any other

23   contact.  I'm sorry.  I see where you're coming from because I

24   initially read it as that there had to be an adult present even

25   with her.  Are you asking that an adult be present during the

1   contact with her also?

2          MS. WITHERS:  Yes, your Honor.  I believe she should

3   be at -- that it should read:  "Any contact with any minor must

4   be in the presence of another adult who is the parent or legal

5   guardian of the minor including the defendant's daughter."

6          THE COURT:  Thank you.  Understood.  Thank you.  And

7   please continue.

8          MS. WITHERS:  The second concern is I note that

9   there's a fairly significant bond package proposed made up of

10  bond monies proposed by the defendant and also bond monies

11  proposed by his parents.  I would like to ask for some form of

12  secured bond, and actually, I want the bond proposed by the

13  parents.  The defendant's father's proposed as a third-party

14  custodian who will be responsible for monitoring his conduct.

15  The defendant will be on home detention with his parents.  His

16  parents will be responsible for keeping his phone secured, for

17  password protecting their devices, for password protecting the

18  internet.  I want to instill some incentive both in the

19  defendant but also in the third-party custodian to ensure that

20  those conditions are closely policed.

21          This is a presumption case.  We're talking about a

22  case where the defendant enticed what he believed to be a

23  12-year-old girl and arrived at a meeting with what he thought

24  to be a 12-year-old girl to engage in very explicit sex acts.

25  The government is concerned that the defendant not have any

1  access to the internet, any access to electronic devices, any

2  access to minors, and I'd like to incentivize him and the

3  third-party custodian to carefully monitor those conditions.

4  This is a very close case from the government's perspective,

5  and I want to make sure that we're not just putting these

6  conditions on paper.  We're incentivized to abide by them.

7        THE COURT:  All right.  Thank you, Ms. Withers.  I

8  understand your comment with respect to 15, and condition

9  number 9 does include the nonpossession of a computer or any

10  device.

11        And with regard to the stepfather will be -- and I'm

12  hoping he's available here, Mr. Walter Leon Allen.  I'm hoping

13  he's available for me to speak with him.  He will be the

14  third-party custodian, and are you recommending that the

15  bond -- I'm a little unclear.  Ms. Gutierrez, it does say that

16  he's willing to sign a 40,000 -- it says "on secured."  Do you

17  mean unsecured?  Because then we refer to unsecured in the

18  bottom paragraph.

19        OFFICER GUTIERREZ:  Good afternoon.  Elizabeth

20  Gutierrez with Pretrial Services.  The defendant's mother is

21  proposing a $40,000 unsecured bond.  I'm sorry, your Honor,

22  that was a typo.  Because she's expecting to receive $40,000

23  back from Fresno County -- from a bail bondsman in the case --

24  they posted bond in the Fresno County state case.  There's also

25  the property -- the property equity package proposed.  However,

6

1   they weren't sure if they can post that, and I'm not familiar

2   with how that works.  Maybe the government knows how, if

3   somebody can post bond even if they're --

4           MR. NUTTALL:  That's --

5           OFFICER GUTIERREZ:  -- in the deeds.  So I don't know

6   how that works.

7           THE COURT:  I'm sorry.  You broke up there.  I can

8   tell you that an unsecured is not going to be sufficient, and I

9   understand that it's a significant amount.  That's not going to

10  be sufficient.  You broke up when you mentioned something about

11  the property.  I'm not sure why they couldn't post a property

12  bond.

13          MR. NUTTALL:  Your Honor, if I may, they posted a bond

14  in the state case, and that bond was posted in the amount of

15  $40,000.  That was when he was initially arrested and I --

16          THE COURT:  I understand that, Mr. Nuttall.  I'm

17  trying to understand what the equity and property will be

18  because an unsecured bond again is not going to be sufficient

19  today.  I think we lost Mr. Nuttall too as well as

20  Ms. Gutierrez.

21          OFFICER GUTIERREZ:  Your Honor, can I turn off my

22  video since my voice was cutting off.

23          THE COURT:  Absolutely, yes, absolutely, Officer

24  Gutierrez.  No problem.

25          OFFICER GUTIERREZ:  The family explained that they're

1    willing to sign $100,000 in equity on behalf of the defendant.

2    However, they have a living trust in the property, and they're

3    not sure if they're still -- if that would allow them to post

4    the equity.  I am not sure how that works.  I think the

5    government is the only one that can answer that question here

6    or Mr. Nuttall.  I only indicated what the family reported to

7    me.

8              THE COURT:  Understood.  I completely understand now,

9    and thank you very much for that clarification.  So the

10   question is whether or not, given the fact that their home is a

11   living trust, whether or not that could be posted as secured

12   property.

13             OFFICER GUTIERREZ:  Correct.

14             THE COURT:  I don't believe that's a problem.

15             Mr. Nuttall, maybe you can enlighten us because, as I

16   indicated earlier, I will be proposing a bond, whether it's

17   cash or property, it will need to be posted.  So maybe you can

18   assist us with that.

19             MR. NUTTALL:  Well, there is equity in their home.

20             THE COURT:  No.  But the question is -- I understand

21   that, but the question is whether or not it can be posted, the

22   property can be posted given the fact that it's in a living

23   trust rather than in their name.  I believe the answer is yes

24   but --

25             MR. NUTTALL:  I believe the answer is yes.  I've seen

OFFICIAL COURT REPORTER, USDC - (916) 426-7640

1   that before.

2          THE COURT:  Great.  Thank you very much.  You've

3   answered my question, and you've confirmed that they can do

4   that.

5          Is there anything further?  Because I am -- and let me

6   tell the parties -- let the parties know what I'm inclined to

7   do.  What I'm inclined to do is to modify paragraph 15, as

8   noted by Ms. Withers, because I agree that any contact with

9   Mr. Dickens' daughter also needs to be in the presence of

10  another adult, and I also am going to impose a $50,000 property

11  bond.  And the inability to use a computer or the not being

12  able to use a computer, prohibition on use of a computer is

13  already set forth in paragraph 9.  So basically we would be

14  modifying 15 and adding a $50,000 bond secured by property in

15  their home.

16         Is there anything you would like to add to that,

17  Mr. Nuttall, before we continue?

18         MR. NUTTALL:  No.  That would be fine, your Honor.

19         THE COURT:  Okay.  Thank you very much.

20         Do we have Mr. Walter Leon Allen on the line?  I

21  don't -- Ms. Kusamura -- oh, I need to go to page 2.  We have a

22  lot of people here today.

23         THE CLERK:  Mr. Leon (sic), if you could please hit

24  star 6 to unmute yourself.

25         THE COURT:  And Mr. Leon, when you have unmuted

9

1    yourself, if you can please let us know so that I can ask you

2    some questions.

3              THE CLERK:  You know, it looks like there was some

4    people on the phone, and it looks like they've all disappeared.

5    I don't see anybody on the phone anymore.

6              THE COURT:  Okay.  Well, let me do this.  Let me --

7    what I will do is ask Ms. Gutierrez to make sure that she goes

8    over the conditions, which I already know you will, Officer

9    Gutierrez, with Mr. Allen, and you've already confirmed that he

10   will be a third-party custodian.  So I'm going to direct my

11   questions to Mr. Dickens or my comments to Mr. Dickens.

12             Mr. Dickens, this is a close call from my perspective.

13   You're charged with a serious crime, and I am prepared to

14   release you based on the conditions set forth in the report as

15   I've modified them.  I want you to listen very, very carefully

16   to each and every condition because your stepdad has stepped up

17   and your mother to -- your stepdad has stepped up to be your

18   third-party custodian, and he has faith in you that you will

19   follow the conditions of release because -- and Officer

20   Gutierrez will confirm that.  So it's very important that you

21   follow each and every condition of release because, if you so

22   much as not follow even one of them, you will likely be back in

23   court, and the outcome will likely be very different,

24   understood?

25             THE DEFENDANT:  Yes.

1        THE CLERK:  Your Honor.

2        THE COURT:  Yes, go ahead.

3        THE CLERK:  Somebody just joined, and I'm wondering if

4   it's Mr. Leon.

5        THE COURT:  Mr. Allen, are you on the line?

6        THE CLERK:  Or Allen.  If so, could you please press

7   star 6 to unmute.

8        THE COURT:  Okay.

9        THE CLERK:  Maybe it's not them.  I apologize for

10  interrupting.

11       THE COURT:  That's okay.  Thank you very much for

12  letting me know.

13       So did you understand what I said, Mr. Dickens?

14       THE DEFENDANT:  Yes.

15       THE COURT:  And if you have any questions about the

16  conditions that Officer Gutierrez is going to be reading into

17  the record, please make sure and ask Mr. Nuttall or Officer

18  Gutierrez because not being able to understand them or not

19  fully understanding what you're supposed to do is not going to

20  be a sufficient reason not to follow them.

21       And I am going to note that paragraph 19 will be also

22  modified, and your release on bond will be delayed until you

23  are able to post the real property bond.  So you're going to

24  need to work on that as quickly as possible.

25       Officer Gutierrez, can you please read the conditions

1    into the record.

2         OFFICER GUTIERREZ:  Yes, your Honor.  Before I begin,

3    I also wanted to note condition number 5, which indicates the

4    passport -- the defendant's passport will be surrendered by

5    December 11th of 2020.  Do we want to modify that as well?

6         THE COURT:  You mean until after he's released in the

7    event he's not released by December 11th?

8         OFFICER GUTIERREZ:  On this, Mr. Nuttall has a

9    different plan that he will obtain the passport and surrender

10   the document by Friday.

11        THE COURT:  The reason -- and it may -- that's a very

12   good question, and thank you for bringing it up.  The only

13   reason I think that might be fine is it does give a full week

14   for the property bond to be posted, and hopefully at the end of

15   this next week Mr. Dickens will be released, and if not,

16   Mr. Nuttall, maybe you can arrange for his passport to be

17   provided to the Court.

18        THE DEFENDANT:  My passport is in my house in Clovis

19   where my ex-wife is.  I don't have access to that house, and

20   it's been expired for five years.  I don't know if that makes

21   any difference.

22        THE COURT:  No, it doesn't make any difference, but

23   thank you for that information.  I'm going to ask Mr. Nuttall

24   to make sure that that is surrendered by December 11th.  So

25   we'll leave that as is, Officer Gutierrez.  So thank you for

12

1   your question on that.

2               OFFICER GUTIERREZ:  Thank you, your Honor.

3               THE COURT:  You're welcome.

4               OFFICER GUTIERREZ:  Mr. Dickens, you are released on a

5   $50,000 property bond secured by the property owned by your

6   mother, Sandra Jean Allen, and your stepfather, Walter Leon

7   Allen, with pretrail supervision and the following conditions

8   of release:

9               You must report to and comply with the rules and

10  regulations of the Pretrial Services Agency.

11              You are released to the third-party custody of Walter

12  Leon Allen, and you must reside with your custodian at a

13  location approved by the pretrial services officer and not move

14  or absent yourself from the residence for more than 24 hours

15  without the prior approval of the pretrial services officer.

16              THE DEFENDANT:  If I wanted to go and get a job, I can

17  do that?

18              OFFICER GUTIERREZ:  You can discuss that later with

19  your officer.  Let me just read the conditions.

20              THE DEFENDANT:  All right.

21              OFFICER GUTIERREZ:  You must cooperate in the

22  collection of a DNA sample.

23              You must restrict your travel to the Eastern District

24  of California unless otherwise approved in advance by the

25  pretrial services officer.

1       You must surrender your passport to defense counsel,

2   and defense counsel will make arrangements to surrender the

3   document to the Clerk, U.S. District Court, no later than

4   December 11, 2020, by noon, and you must not apply for or

5   obtain a passport or any other travel documents during the

6   pendency of this case.

7       You must report any contact with law enforcement to

8   your pretrial services officer within 24 hours.

9       You must not possess, have in your residence, or have

10  access to firearms and/or ammunition, destructive devices, or

11  other dangerous weapons.  Additionally, you must provide

12  proof -- you must provide written proof of divestment of all

13  firearms and/or ammunition currently under your control.

14      You must also participate in a program of medical or

15  psychiatric treatment as approved by the pretrial services

16  officer, and you must pay all or part of the cost of counseling

17  services based upon your ability to pay as determined by the

18  pretrial services officer.

19      Additionally, you must not use or possess a computer

20  or any device capable of accessing the internet in your

21  residence.  However, your third-party custodian and your mother

22  are allowed to have their three iPads, one desktop computer,

23  one laptop computer, and one smart phone which must be password

24  protected and secured at all times, and you must not have

25  access to said devices.

1        Any employment must be approved in advance by the

2    Pretrial Services Agency, and you must not be employed or

3    participate in any volunteer activities in which there is the

4    likelihood of contact with children under the age of 18.

5        You must not loiter or be found within a hundred feet

6    of any school yard, park, playground, arcade, movie theater, or

7    other place primarily used by children under the age of 18.

8        You must not view or possess child pornography as

9    defined by 18 U.S.C. Section 2256(8) except in the presence of

10   your attorney to prepare for your defense.

11       You must surrender your smart phone to your

12   third-party custodian who will secure the device.

13       You must not access the internet, and your third-party

14   custodian must password protect his internet or wifi service;

15   and you must not have access to the password.

16       You must not associate or have verbal, written,

17   telephonic or electronic communication with any person who is

18   under the age of 18 without -- sorry, your Honor.  Let me

19   just -- including your daughter except in the presence of

20   another adult who is the parent or legal guardian of the minor.

21       Additionally, following your release from custody, you

22   must complete a 14-day quarantine period at your family's

23   residence.  During this 14-day quarantine period you must

24   remain inside your residence at all times except for medical

25   needs preapproved by the pretrial services officer.

1    You must comply with any and all telephonic and

2    virtual video recording instructions given to you by the

3    pretrial services officer.

4    Following the 14-day quarantine period, you must

5    attempt to obtain a COVID-19 test with a medical provider at a

6    location approved by the pretrial services officer, and you

7    must report the results of your COVID-19 test to the pretrial

8    services office immediately upon receipt.

9    Additionally, upon completion of the 14-day quarantine

10   period and after you have submitted a negative COVID-19 test

11   result to the Pretrial Services Agency, you must participate in

12   the following location monitoring program component and abide

13   by all the requirements of the program which will include a

14   location monitoring unit installed in your residence and a

15   radiofrequency transmitter device attached to your person.

16   You must comply with all the instructions for the use

17   and operation of said devices as given to you by the Pretrial

18   Services Agency and employees of the monitoring company.

19   You must pay all or part of the cost of the program

20   based upon your ability to pay as determined by the pretrial

21   services officer.

22   You will be required to participate in the home

23   detention component of the location monitoring program which

24   you must remain inside your residence at all times except for

25   employment, education, religious services, medical, substance

1    abuse, or mental health treatment, attorney visits, court

2    appearances, court-ordered obligations, or other essential

3    activities preapproved by the pretrial services officer.

4    Essential activities include haircuts, DMV appointments,

5    banking needs, or other activities that cannot be completed by

6    another person on your behalf.

7            And lastly, your release on bond will be delayed until

8    the posting of the property bond.  Upon your release, you must

9    travel directly to your residence and contact Pretrial Services

10   telephonically.  Sorry, that was a lot.

11           THE COURT:  Thank you very much, Officer Gutierrez.

12   And thank you again.  I know how busy your office has been, and

13   thank you again for the very thorough report and much

14   appreciated.

15           Mr. Dickens, did you understand those conditions?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And do you have any questions you wish to

18   ask Mr. Nuttall or Officer Gutierrez?

19           THE DEFENDANT:  No.

20           THE COURT:  If you do, you can ask them later.

21   Probably best that you speak with Mr. Nuttall separately.

22           THE DEFENDANT:  Yes.

23           THE COURT:  Please make sure and follow each and every

24   condition because, as I indicated earlier, the outcome will

25   likely be different if you violate any of those conditions.

1          And Officer Gutierrez, if you can make sure that

2     Mr. Allen is aware of all the conditions and understands that

3     he needs to make sure that Mr. Dickens follows all of those

4     conditions, I would appreciate it.

5          OFFICER GUTIERREZ:  I will, your Honor.  And I also

6     want to note that it appears they are now connected to the

7     line.  I see their number at the bottom.  I don't know if your

8     Honor would still like to speak to him.

9          THE COURT:  Thank you.  Mr. Allen, are you on the

10    line?  Okay.  I think you're both correct, Ms. Kusamura and

11    Officer Gutierrez, and I believe maybe we just can't seem to

12    get a connection.  But that's fine.  You can speak with him.

13         And on what date would the parties like me to set a

14    status conference?  And it would be before me, so it would be

15    on the first, third, or, fifth Wednesday of the month?

16         MS. WITHERS:  Your Honor, I'll defer to defense

17    counsel.  We did produce discovery this week, and so I don't

18    know how much time defense counsel would like to review the

19    material.

20         THE COURT:  Thank you.

21         MR. NUTTALL:  I would like the first one, January 6th,

22    your Honor.

23         THE COURT:  And you're sure that will give you enough

24    time to review discovery and accomplish something in court,

25    Mr. Nuttall?  Otherwise, you will be filing a stipulation to

1    continue.

2         MR. NUTTALL:  Okay.  Why don't we set it for

3    Wednesday, January 20th.

4         THE COURT:  Okay.  That date works for you,

5    Ms. Withers?

6         MS. WITHERS:  Yes, your Honor, it does.

7         THE COURT:  Any objection to my excluding time through

8    and including January 20th for defense preparation,

9    investigation, for review of discovery as well as for any plea

10   negotiations?

11        MR. NUTTALL:  Yes, your Honor.

12        MS. WITHERS:  You do object?

13        THE COURT:  I probably didn't phrase that very well.

14   I asked if there were any objections.  I think you mean --

15        MR. NUTTALL:  Oh, no, no objections.

16        THE COURT:  Thank you very much.

17        MR. NUTTALL:  Your Honor, may I ask a question.  There

18   is a bond -- a bail bond posted in this case.  I'm assuming,

19   from what I've heard, that that particular bond need not be

20   maintained in addition to what you've ordered.

21        THE COURT:  That is correct.  I'm not sure how long it

22   will take to exonerate that bond, but that bond has nothing to

23   do with this case.  I've ordered a property bond --

24        MR. NUTTALL:  Right.  Okay.  I just wanted to make

25   sure.

19

1          THE COURT:  -- of $50,000.  Thank you very much.

2          Anything further before we conclude?

3          MS. WITHERS:  No, your Honor.  Just to be clear, we

4    did exclude time through January 20th.

5          THE COURT:  Correct.  Time is excluded through and

6    including January 20th.  Thank you.

7          MR. NUTTALL:  Was that 1:00?

8          THE COURT:  Yes.  That would be at 1:00 p.m. because

9    it's a criminal status conference calendar, correct.

10          MR. NUTTALL:  Thank you.

11          THE COURT:  You're welcome.

12          (The proceedings adjourned at 2:37 p.m.)

13                    --oOo--

14    I certify that the foregoing is a correct transcript from the

15    record of proceedings in the above-entitled matter.

16                    /s/ Kacy Parker Barajas

17                    _____
                      KACY PARKER BARAJAS
18                    CSR No. 10915, RMR, CRR, CRC

19

20

21

22

23

24

25